The first case on our call is agenda number 130067, People of the State of Illinois v. Matthew Smith. Counsel for the appellant, are you prepared to proceed? Good morning, Your Honors. May it please the Court, Counsel, I'm Assistant Attorney General Michael Cibula on behalf of the people of the State of Illinois. The defendant was convicted of murder based on a variety of evidence, including three eyewitnesses who identified him as the shooter. However, the appellate court reversed the defendant's conviction because it held that the trial judge's decision to exclude the defendant's mother from the courtroom because the parties agreed that she was a witness violated the defendant's right to a public trial. This court should reverse the appellate court's judgment because it's settled law that excluding witnesses from the courtroom does not implicate the public trial right in any way, let alone violate it. The facts here are simple and undisputed. On the first day of trial, as happens every day in courts across the country, the parties jointly moved to exclude witnesses from the courtroom. One of those witnesses was the defendant's mother. She had been included on the prosecution's witness list for some time leading up to trial. Now, a key point in this case is that in the trial court it is undisputed that the defendant's mother was in fact a witness. It was understood between the parties that if the defendant testified, the prosecution might wish to call his mother to rebut or impeach parts of his expected or potential testimony. In fact, the trial judge specifically asked defense counsel, do you agree that the defendant's mother is a witness? And counsel said, yes, she's a witness. So there's no argument that she wasn't a witness. No one suggested that excluding her violated the public trial right. What defense counsel asked was for the court to make an exception for the defendant's mother. That's the exact word she used a couple times, exception. In other words, exercise her discretion and allow her to remain in the courtroom even though she's a witness basically for two reasons. Because odds are she wasn't probably going to testify given the way the trial was expected to go. And also the defendant would feel essentially more emotional comfort if his mother was with him in the courtroom. Based on what the parties said, the trial judge reached a reasonable conclusion. She said I'm going to exclude her just like all the other witnesses because you're telling me she's a witness. But I want you to continue conferring throughout trial. If there comes a time when you both agree she's not going to be called, let me know immediately. I will bring her back in, which is exactly what happened. Counsel, in this instance, given the circumstances, what was the authority of the trial court judge? What standards should we be looking at as far as what the trial court decided to do or not do? Yes, Your Honor. The law is settled that this court has said, the United States Supreme Court has said, that excluding witnesses from the courtroom is something that is subject to a trial court's discretion. So this court should review it for an abuse of discretion, meaning was it an arbitrary decision? Was it an unreasonable decision? Obviously, this was not an arbitrary decision. The trial judge had a discussion with the parties. They told her that she was a witness. So the judge said I'm going to do what is the default rule, what's existed for literally centuries, is I'm going to exclude her from the courtroom. But listen, if you decide that she's not going to testify, let me know. I'll bring her back in. That is a reasonable decision. It's not an abuse of discretion, which is the standard that we reviewed as under. So he's not entitled to a new trial. So they're saying violation of public trial. Is it different, a different standard if that's the issue? And what do they have to show to get us to that issue? So public trial is structural error. So if you violate the public trial rate, that's automatic grant for a new trial to the defendant. It's not reviewed for abuse of discretion. It's basically de novo review. You go through what's called a Waller test, and was there an overriding reason you had to exclude or were there other alternatives you could have chosen? So the appellate court reviewed this as a public trial right issue, found a public trial violation, so he automatically gets a new trial. The mistake that the appellate court made, and I think the mistake the defendant is continuing to make in his arguments in this court, is that it is settled law that excluding witnesses from the courtroom does not implicate the public trial right in any way, let alone violate it. What this court has said, what the United States Supreme Court has said, is that the purpose of the public trial right is to prevent secret trials. So if the public is allowed to attend, the media is allowed to attend, there's really no violation of the public trial right. Now obviously in this case the media was allowed to attend, the public was allowed to attend, that's not an issue. What is at issue is excluding a single person that the parties told the trial judge was a witness. And the law is clear that that does not implicate the public trial right in any way. We cited a number of cases for that. Now brief, I'll just mention one, for your honor, is the Nicely case, which is a case from the Georgia Supreme Court. This issue came up for the Georgia Supreme Court several years ago. And the Georgia Supreme Court did a survey of every single case it could find literally anywhere in the country. And the court said it could not find even one case where a court held that excluding a witness from the courtroom implicated the public trial right. To the contrary, the court said it found case after case in which courts expressly said that excluding witnesses from the courtroom does not implicate the public trial right in any way, let alone violate it. That's absolutely true. We cited a number of cases for that same point in the brief. Now on appeal. Counsel, you cite Waller, but there are two factors that I'd like for you to focus on. One, Waller factor is the closure must be no broader than necessary to protect the interest. Wasn't this much broader than was necessary? I mean, it was very clear from the trial testimony that it would only be necessary to exclude the mother if the son was called, if the defendant was called. He was never called. So why wouldn't it be possible to just let the mother sit in until the son testified? So to be clear, defendant is arguing that the Waller test applies. The Waller test only applies when there's a public trial issue. We are saying in the public trial that Waller does not apply in this case at all because the public trial right is not implicated. And we've cited case after case for that same point. Defendant doesn't really cite any cases for his position that if a witness is excluded, you apply the Waller test. The Waller test is applied when you say, look, for security reasons, we're going to say only 10 people can attend this trial. We don't care who those 10 are, but we're going to exclude most of the public or we're going to exclude most of the media. That's when you apply the Waller test. You do not apply the Waller test in this case when the parties tell the court, this is a witness we want to exclude. So imagine if you would apply the Waller test in these situations. We all know every single trial, what do the parties do? They ask the court to jointly move the court to exclude the witnesses. We don't ask courts to apply the Waller test to every single one of those witnesses. Here the parties agreed that she was a witness, so the court followed what's literally centuries of practice and excluded her from the court. So, counsel, assuming set Waller aside, the reason for excluding her would be what? The reason for excluding, as courts have recognized, is you exclude witnesses. No, I'm talking about this case, this mother. What is the specific reason for excluding her? What is her potential testimony? So the prosecution was very clear about this, that they did not intend to call her in the case in chief, but they might want to call her to rebut potential or expected testimony from a defendant. To be clear, there was not a lot of discussion on the record of this because defense counsel agreed so quickly that she was a witness. But what the prosecutor said is you have to keep in mind the defendant was 17 when he committed this murder. So when he was arrested, taken to the police station, his mother was with him. The prosecutor didn't go into a lot of detail, but he said, look, we have a concern that you may testify about things that did happen or didn't happen. So under that explanation that you're giving me, why was it necessary to exclude her from opening statements and from the entire prosecution's case in chief? Sure, Your Honor. So first I'd say that's standard practice. We don't expect the judges to. I don't care about standard practice. I want to know about in this particular case, under these facts, why was it necessary to exclude her from opening statements and the prosecution's entire case in chief? Well, opening statements, for example, what happens? Defense counsel previews their case. If the defense counsel says I expect testimony to show this or I expect testimony to show that, that's still the same concern of a witness might frame their testimony based on what they hear in court. Was it the concern that maybe the State would use her to impeach defendant or to clear up some testimony, conflicting testimony that he may give? If that's the case, what does that have to do with opening statements? For the reasons I just mentioned, sometimes that defense counsel previews what they expect the evidence to show. And if defense counsel is planning to put on her client to testify to X, Y, or Z and she previews that for the jury, well, now that person who might be needed to impeach is hearing that. So that's why witnesses are routinely – I know Your Honor said that you don't want to hear about standard practice, but that is why standard practice is to exclude them from the courtroom. We don't ask trial judges to go in there with a scaffold and say, well, you're going to be excluded from this part and this witness is going to be excluded from this part. This defendant was a minor, correct? At the time of the murder he was, not at the time of the trial. Okay. So under your reasoning, he should be – the mother would be excluded from everything except the defendant's testimony if the defendant was – actually gave testimony. So in other words, she would be excluded from the whole trial. Yes. I mean, if the parties agree that she's a witness, then she needs to be excluded under normal standard practice. And in this case, while the defendant wants to argue that she was an early witness or she wouldn't need to testify, his own counsel agreed that she was a witness. And it was simply not an abuse of discretion. Again, that's the standard abuse of discretion. So we might – someone might say, look, if I were the judge, maybe I would have let her stay for opening statements. But that's not an abuse of discretion. An abuse of discretion is something that's arbitrary or unreasonable. So we might stay – maybe a better practice would have been to allow her to – Your counsel, just to back up, though, you – in response to Justice Cunningham's earlier question, you said, you know, you can't expect the judge to use a scaffold to determine when, you know, a witness can and can't be in the courtroom. But in this circumstance, defense counsel did say, yes, she's a witness, but the State has said she's only here, you know, for impeachment in case the defendant testifies. Wouldn't that alleviate the need for the scaffold? Because both sides sort of agreed this is when she would be called to testify. This is the circumstance. So they're sort of providing the roadmap. In that circumstance, is it, you know, an abuse of discretion or unreasonable to say she's going to be a very interested party, you know, not just any witness, not a police officer, not somebody that is just there, but someone that is, you know, a family member. So the circumstance is a little different. Does that play into it, that they sort of said this is exactly when her testimony would be needed and why? If this review were de novo, then maybe you would say, well, if that was error, that's not how I would do it. But under the abuse of discretion standard, that's an extremely difficult standard to meet. This Court has routinely said it's the most difficult standard to meet. You would have to show that this was an arbitrary, unreasonable decision. And even if we disagree, if we say there was a better way to do this, or maybe she should have been able to listen to opening statements, well, it's an abuse of discretion standard. Are we really going to say that a trial judge acted unreasonably or arbitrarily when the parties both said she was a witness? I don't think that's the way that it should go forward. So I think— Counsel, if we were to adopt what's being put forth by my colleagues, I just can't help but wonder, are we going to start trying to have trials within trials? So here's what you can hear, and then depending on what we expect another witness to say while you're in here, we have to decide if you can hear that part and what's going to come out in the opening statement, and then we have to decide how much of that you can hear. Maybe you can hear the first five minutes of it, but not the middle of it or the end of it. I mean, what does that look like? That's the exact point I was trying to make by talking about the scalpel, Your Honor. We don't—I think we all know the trial experience. Courts get very long witness lists. We don't expect them to say exactly what Your Honor says. Well, this person can hear this part, this person can hear that part, and not only make those decisions and have the trial within the trial, but then enforce that every step of the way in a multi-day trial with multiple witnesses and potential witnesses. I mean, I just can't imagine how that would work in practice, and it doesn't work that way in practice. The way it works in practice is the parties jointly move to exclude the witness if there's some person asking for an exception, in other words, asking the court to exercise their discretion, then we review it for an abuse of discretion. And we don't ask, well, is that the way I would have done it? We ask, was the trial judge's decision completely unreasonable, completely arbitrary? And you absolutely cannot say that on this record. Well, given the fact that the defendant never testified, wouldn't it have been reasonable to permit the mother to sit in the courtroom? I mean, everybody agreed she was just there for rebuttal purposes. And he did not testify. There was always the possibility he would testify, and counsel never said. This is the key point. Counsel never said he's not a witness, and counsel certainly didn't say, well, we've already decided he's not going to be a witness. If counsel had said, I guarantee he's not going to testify, Your Honor, so therefore he's not a witness, well, then we're in a different world. Then we're potentially in the public trial, but that's not what counsel said. Until the decision was made that he was not going to testify, there was the possibility that he might testify. And as long as there was the potential that he might testify, there was the potential, everyone agreed, that his mother might be needed to impeach his testimony. But nothing prevented the judge from letting the mother sit in the courtroom until he was called, correct? Nothing prevented him. No, there's no law that we are citing that says she was prevented from doing so. What we are arguing and what we've proven is that it was a reasonable decision under the circumstances and therefore was not under the use of discretion. Maybe I'm confused on the facts. She was excluded throughout the whole trial? I thought the judge tried to frame this in a narrow way and said to the State, once you've made a decision that you're not going to be calling her, let me know. And when the State rusted, then the judge said, therefore I will ask her to come into the courtroom. Isn't that what happened? That's exactly what happened. From the moment that this came up with the motion to exclude witnesses, the judge said, I'm going to exclude her, but she specifically instructed the parties. She understood that this was the defendant's mother. She specifically instructed the parties, keep conferring. If there comes a time that you both decide, look, we're not going to need her to testify, tell me immediately. I will immediately bring your mother back into the courtroom. That is what happened. The trial progressed. The State's case began to wind down. The defendant made the decision he could not testify. They went through all the discussion that he said he was not going to testify. What happened? The mother was immediately brought into the courtroom because the prosecution immediately said, well, we're not going to need her then since he now said he's not going to testify. So it's not just a complete exclusion. The trial judge took into account that she was the mother, that her purpose was limited, and once it became clear that she would not testify, the judge immediately brought her back. So, again, a reasonable decision, certainly not an abuse of discretion, certainly nothing that can reasonably be said to entitle the defendant to a new trial. Let me ask you another question. I mean, obviously this is the key issue, but here in the appellate court, the court went on and addressed I think four other issues. Yes. Do we have to look at all of those? So, and that is exactly where I was going to leave you, Your Honor. The defendant raised a large number of issues in the appellate court, some of which were not addressed. So we're asking this court to reverse, have to be remanded to deal with those unaddressed claims. There are four claims that the appellate court did address. I think this court would need to address them because one, for example, had to do with a – there were multiple lineups that were conducted where eyewitnesses identified in the lineup as the shooter. One of those the appellate court said was unduly suggested, so it remanded for further hearings on a motion to suppress the lineup identification. So the court would need to address that, for example. We do have to address that, you're saying? I'm sorry? We do have to address that. So you have to address that. There's one about –  Could I ask this? So in terms of that specific issue of the lineup, I'm really unclear on the facts. I have to say I have not read the transcript yet, but there was a motion to suppress. There was a hearing, correct? Correct. And it was all about the suggestiveness of the lineup, the issue that he was – in one of the lineups, he was wearing the same shirt that was described by the eyewitnesses, right? Correct. That was the issue in the motion to suppress? Correct. What was the evidence that was adduced in the hearing about how it came to be that the defendant was wearing the red shirt? So just to kind of give a chronology here, so I think with all this is undisputed. This is a murder that happens at a bar. I think everyone agrees he's at the bar. He's wearing this red shirt. Multiple eyewitnesses say he's wearing the red shirt. It's undisputed. The police immediately respond to the shooting. He tries to evade police, kind of a brief high-speed chase. While he's in the car, he's in the passenger seat, he takes off the red shirt. So he's wearing a white undershirt underneath it. The car comes to a stop. He starts running. The police chase him, arrest him. They bring him back to the car. They locate the red shirt along with what's believed to be the murder weapon, a gun that matched the description of the gun. So what happened when they get to put together the lineup? So they take him to the police station. And the police are obviously securing the scene, gathering up their eyewitnesses. He's wearing the white undershirt initially. They hold a first lineup relatively quickly when they have one eyewitness. He's wearing the white undershirt, not the shirt he was wearing when he committed the murder. The eyewitness identifies him as the shooter. Time goes on. Later that day, they're still gathering up their eyewitnesses. The testimony from a police officer at the suppression hearing was that the defendant voluntarily chose to put on his red shirt. He didn't really explain why, but he said he voluntarily chose to put on his red shirt. So specifically the police officer said, Mr. Smith, asked to put on his shirt. That was the testimony that was deduced? I can't remember the exact words, but it was he voluntarily put on his shirt. We didn't require him. He made the decision. I can't remember the exact wording, but he voluntarily chose to put on his red shirt. A prosecutor later proffered that the defendant wanted to put on his red shirt because he was cold. If you look at the pictures, the white undershirt is like a tank top. When you say proffer, what do you mean? This came up at trial about the red shirt, and the prosecutor made a proffer report that we have testimony, we can present testimony, that a police officer would testify that the specific reason he voluntarily chose to put on his red shirt. But that wasn't an admitted evidence. That was not an admitted evidence. What was admitted evidence at the suppression hearing was that the police officer's testimony that it was a voluntary decision. So he puts on the red shirt. They have a second lineup where three eyewitnesses identify him again. Two of them identified him as the shooter. One didn't see the shooter but said he's the guy that started the fight. There was no evidence to the contrary as to why he was wearing the red shirt. There was no evidence that the police directed him to do that or anything like that. There's absolutely no evidence that the defendant can cite. I think you would agree with this. There's no evidence that the defendant didn't testify and say, well, wait, they forced him to put this red shirt on. No one said we thought it would make more sense to put on the red shirt. No, it was always he just voluntarily did it. And that makes sense when you look at the chronology because the very first lineup, he was wearing the white undershirt. The police weren't trying to manipulate the situation. It was a decision he made. That's what the evidence is. He has no contrary evidence. In putting together the lineup, do the police have any obligation to tell him, hey, you probably don't want to wear that shirt since, you know, you believe you were wearing it when you committed the crime? Yeah, we cite a large number of cases for that exact point, Your Honor. There's absolutely nothing unduly suggestive about a defendant wearing his own clothes, even if they are the clothes that he was allegedly wearing when he committed the offense. Now, the police cannot force him to wear particular clothes. We all agree on that. But there's no evidence that they forced him to. But isn't the entire argument, though, about the suggestiveness of the lineup isn't just about what shirt he has on, but it's him in relation to the others that appear? Because I know there's a challenge to not only the first where he's in the white T-shirt, but then to the second one in that you have, you know, somebody that is alleged to have shot someone that's in a red shirt, and you have one person in a red shirt, and everybody else in white shirts. I mean, so it isn't just what he chose to wear or what, you know, but it's the grouping. Is that correct or am I incorrect when I say that from a legal standpoint? If I can just answer that really quickly, I don't know when our time's up. The defendant did raise a lot of those issues Your Honor mentioned about, you know, they didn't all look the same and things of that nature. That goes to the weight of the evidence. That does not go to whether it's admissible. The law is clear. We cite a number of cases. Police are not required to have everyone look the same. They're not required to have them all have the same haircut, the same age, the same weight. So it's your contention that there is no point where the prejudicial nature outweighs any value and that it would be inadmissible. What the law says is that police cannot take actions that highlight the defendant, that basically tell the eyewitness to pick this guy. So they cannot force him to wear unusual clothing that would highlight him, courts say, or spotlight him as compared to everyone else. But the police are absolutely not required to make sure he looks like everyone else, neither in terms of clothing, hairstyles, anything like that. It goes to the weight of the evidence the jury might put on the evidence, but it is not an issue of admissibility. Therefore, unless there are any questions, we ask this Court to reverse the public court's judgment and remand for consideration of his remaining claims. Thank you very much, counsel. Counsel to the athlete. Good morning. Good morning. Before I talk about the public trial, just on that last point about the shirt, I believe the evidence at the line-up hearing was that he asked for a shirt and the police brought him that shirt. Our position is that that shirt should have been given to him. Are those the words that were spoken? Because that's not what we heard from you. I've seen it. The reason why I asked the question was, in each one of your briefs, you say this is what the evidence was, and you say two different things. Right. I would have to look back at the transcript, and unfortunately, I just can't download it because I don't have it saved on my computer. Sorry to have to refer back to it. But my recollection is that the police testified that he asked for more clothing, and then it was proffered by the prosecutor at the trial that he had said he was cold, but the shirt was in the possession of the police. The police could have given it to him. And that was evidence in the motion to suppress? Yes. The shirt was always in the police's possession. The police made a conscious decision to give him that shirt while he was in custody before the second line-up. Which is the exact opposite of what the state says the record shows. Well, that is what the record shows. He was arrested. He was wearing a white T-shirt. He was placed in custody. The red T-shirt was separately taken by the police. According to the police, that was put with his personal property, so when he indicated that he was cold, they gave him that shirt, although they then submitted that shirt for gunshot residue testing and so forth. But they could have given him some other shirt. He went to the police station in the white shirt. He was in the first line-up in the white shirt. He certainly didn't have the red shirt with him in the cell and choose to put it on. They brought him the red shirt. Can one find that in the record, that the police brought him the red shirt? Absolutely. You will absolutely find that in the record. Yes. So as far as the public trial issue, I think that this is a lot of semantics. Yes, maybe she was a witness in the broadest sense of the word, but she wasn't a trial witness. There was something, and I sort of mea culpa here, because I took a look at some of the record earlier this morning at the hotel. The state filed two answers in this case, and I didn't put this in my brief, and I apologize. They filed two answers. They can be found at page 34 of the common law record and page 60 of the common law record. They didn't list the mother as a witness in either answer. What happened apparently was that the prosecutor handed up a handwritten witness list to the judge before trial, and the mother was listed on that, and then there was this discussion back and forth. As a practical matter, there was nothing for this mother to testify about. The judge comments at one point that the mother is going to testify in rebuttal about a statement. There was no statement. The judge thought there was a statement based on what the prosecutor was saying. Her words when she excludes the mother is the mother could testify about a statement, but there is no statement. There is no interview with the minor, and if you take this position that when a mother is there with a minor in the room, she is automatically a witness to everything that took place, then no parent of a minor can sit in on a trial. It's going to be a blanket exclusion any time the prosecution asks for it. Now, let's go back to the record. First of all, you admit, and you say on page 32, that your argument is that the court's decision to exclude was arbitrary, fanciful, unnecessary, unreasonable. In other words, you agree that the standard is an abuse of discretion. If you analyze it as a witness exclusion, but we believe it's a public trial issue. We argue that. Let's start with the witness exclusion, okay? Because here, contrary, I think, to what you're saying, the defense lawyer, when the issue is raised, says, yes, she is a witness. The defense lawyer says to the judge when there's this discussion about is the mother on the witness list, and the state says yes, and then the defense lawyer concedes, yes, she is a witness, but we're asking for an exception. So is that correct? It is if you break it down to just those few words, but there is, and I have the transcript in front of me, there is a great deal of argument by the defense lawyer about why she's never going to testify, and why she has nothing to say, and that nothing took place in that room, and that the state's argument that they're going to call her as a witness is incredible. So there's the one statement where she says she is in response to the court, and they're going back and forth, but there's a great deal of argument that she isn't, and the reasons why she's not a trial witness. And the state is arguing she's a rebuttal witness, yet they allow her in. They agree she can come in before the defense case. They agree she can come in then. She wasn't a rebuttal witness. There was nothing for her to rebut. There was nothing for her to say. There was nothing that had taken place in that room that she could talk about. So back to the question that Justice Holder-White asked. So we understand that motions exclude having an every trial.  And usually the standard in the cases say if a witness is on the witness list, they're a witness, and therefore they fall within the group of people to be excluded. So that's sort of normal practice of how things happen. Yes. But you're saying that when there is a motion to exclude, if there's a request such as this, in the court's discretion, the court has to analyze each one of the witnesses to determine whether or not to exclude them or not? No, I'm saying that if you look at this record, you've got a prosecutor who did a lot of sneaky things. When you look at all of the issues, Your Honor, you're going to see there are statements that weren't disclosed. This is some of the issues that weren't reached by the appellate board that we've reached. There are statements that weren't disclosed that were blurted out by witnesses numerous times, including one where they said that they need to go. So you've got to look at the timeline. The judge has this issue in front. Day in, day out, bread and butter, every single trial that's happened. Right. Right? It's long before anybody makes a closing argument or anything like that. The judge says, okay, motion to exclude, of course it's granted. This person is on the witness list. Of course that she's going to be excluded. Now we're going to have a conversation about it. Are you saying that in every case when the court is faced with this kind of motion, that as we all agree is a discretionary one, that the court has to go through each witness and make some kind of analysis? And if it is, what are the boundaries of that? No, because in every case there's not an attorney objecting to the exclusion of a witness. I do lots of trials and we say motion to exclude witnesses. Both sides agree. Witnesses are excluded. You make sure the witnesses are out in the hallway. I think it's probably a handful of times that I've ever argued that someone shouldn't be excluded from a trial. Did counsel object? She did. Did counsel object or did counsel ask for an exception? Well, counsel, again, I think that we're talking semantics. When we say exception or objection, isn't asking for an exception. Exception and objection are the same thing? I think in this case they are. I mean, I don't think you have to say the word objection to make it clear. When you're asking for an exception, it's clear that you're objecting to the exclusion of the witness. You're not in front of a jury. There's not a witness on the stand. So if I say I'm asking for an exception, Your Honor, that means I'm objecting? Yes. I think that that's an objection in this instance, that that's clearly that you're asking that the judge not exclude this person. Then I can lie to say I agree that this person is a potential witness, but yet I'm still objecting? Well, again, a witness and a trial witness I think are two different things. Was this a trial we were talking about? It was a trial, and she explains why she's not a trial witness. Counsel, what you're saying is that the decision on the day of trial to give a handwritten piece of paper to the judge listing her witness, just purely, is it protectual? Is it that in fact this isn't a real witness? This was done solely for the purpose of getting this woman excluded? Yes, that's exactly what I'm saying. That's what we said before the appellate court. That's what we're saying before this court, because if you look at this record, there's absolutely not one thing that this person could have testified about, not one thing. So why did defense counsel agree then that she was a witness? Why she said that, I think, and again, I can't get in defense counsel's head. This was a lawyer who I, from the record, came into the case very late, substituted for another public defender who had had the case for a number of years shortly before trial. I think that when she said that, she was just referring to, yes, she was in the room, so, yes, she saw things. But then, again, if you take that one sentence, but if you look at the pages of objections, she explains why she's not a witness and why there's nothing she would have testified to and why she couldn't say anything. And then eventually she says, look, everything that occurred in that room is recorded. It's all on video. Counsel, did the state file a list of witnesses before the trial? I'm assuming that they handed one up. I cannot find it in the record. But it's been my experience that whenever you have a jury trial, bless you, whenever you have a jury trial that the state will hand up a handwritten list of witnesses or type both sides will for the judge so that the judge can read the list to the jury. The file of the jury trial. Don't they discuss that in the colloquy that we're talking about? Doesn't the state say she's on the witness list? They say on the witness list. And I assume they're referring to the – So in the record it says she is on the witness list and no one objected to that. Right. I assume they're referring to the handwritten because she's not listed on the answer to discovery, on either answer to discovery that was filed. So do they list their witnesses in the answer to discovery? Yes. Okay. They do list their witnesses in the answer to discovery. They're required to list their witnesses in the answer to discovery, and they're not. And the mother was not on that answer. She is not on either answer to discovery. But in the moment when the trial judge is trying to exercise discretion, that's what I want to go back to, exercising discretion. What do the trial judge know? That's kind of what I want to think about. Sure. We know the judge has the discretion to exclude witnesses. And here the judge is trying to gather information so that the judge can make a sound, you know, exercise sound discretion. Right? And the judge has said she is told she is on the witness list, and the defense lawyer says she is a witness. That's the universe of what the trial judge knows when the trial judge tries to fashion an order. Well, no, the trial judge knows that there's no statement, but the trial judge, the state is making the trial judge think that there's a statement, but there is no statement. If you read this transcript, it's very sort of deceptive what occurs there and what's being said. There's no statement, and the public defender has explained this. There's no statement that she can testify to. There's no interaction. There's no conversation between her and her son about what occurred that she can testify to. There was simply nothing, and that is explained to the judge, and then at the end the judge says she is a witness to the defendant's statement, and there is no statement. So that would be an abusive discretion because her reason for excluding her is incorrect because she's got the wrong factual predicate. She believes that she is a witness to a statement that the young man made when there was no statement. When you say no statement, no statement was made to the police. No statement was made to anybody. There's no statement to the mother in that room. There's no statement to the police. There's some reference to a recording. The video recording that they have to do that I think is the subject of the next argument, actually. The video recording that they have to run in the room. So there's constant video when someone is in one of these, as we like to call it, the interrogation rooms at the police station, and everything that took place was on video. So if Matthew had said to his mother, you know, I messed up or anything like that, then yes, fair game, but nothing like that took place. There was zero. The only discussion that's referenced by the prosecutor in this entire back and forth is his discussion with his mother about whether or not he should invoke his right to remain silent. And that is not admissible. We know that's not admissible. That would be a doiling violation if that were to come up. So we know that's not admissible. Counsel, can we shift gears a little bit and talk about some of these other allegations of error? We spoke about the lineup, but there also is this concern about the GSR testing and the expert testimony regarding the experts' testimony about the number of particulates used for that. Can you explain what your take is and whether or not that is sufficient to reverse on that issue? Well, I think it is because the state called an expert witness. As we know, in Illinois, we require three particles. That's sort of the threshold. That's the state police threshold. I would add this morning, besides looking at the common law record, I did a chat GPT and I think it's called rock search to see if there was any state. This witness testified that in her training, she had learned that some states do one particle, except one particle is the threshold. According to AI, there are no states. I just don't know how reliable that is. I've been unable to locate anywhere. So is that part of the record? Well, no. What AI says about it? I don't know if the court can... So will you be considering that? I don't know if you can take judicial notice. I tried to find the state that accepted it. I can tell you that the FBI doesn't accept it, based on our research. But then the witness, the expert testified that in her training, that some states accepted one particle as a threshold. This was not disclosed. This was unknown to anyone. And then the state argued in closing argument that, yes, Illinois wants three particles, but, you know, in some places this might be a positive test. And that's clearly, it wasn't disclosed. The defense had no opportunity to investigate these allegations. I know that the state here says, well, it's waived because the defense didn't ask for continuance. I don't know what they could have accomplished through a continuance. They couldn't have gotten their own expert at that point. They couldn't have really done much with it. The cat was sort of out of the bag. And this stuff has to be disclosed. This court was clear in Lovejoy that the entirety of an expert opinion has to be disclosed. And if an expert is going to opine that there are other standards or other thresholds, then that should be disclosed. It shouldn't just be disclosed that something is a negative finding, which is what was disclosed in this case. It was disclosed as a negative finding. And then they called this witness. They had prepped the witness. And, again, this is what I was referring to when I said that there were a lot of underhanded things that I thought went on in this trial. They had prepped this witness to say that one particle was sufficient in other states. They hadn't told anyone they were going to do it. And then they asked the questions about it. In your training, did you learn this information about one particle and one particle in other states? But counsel, the defense had an opportunity to cross-examine that witness and debunk that, didn't they? They did, but they were unprepared for it because it wasn't disclosed. So how could they? They had no information. They had never done any research on what other states did. They had never done any research on really her training. The Illinois State Police had, to the best of my knowledge, they have basically one person who testifies on all the gunshot residue cases, and that was the individual who testified in this case. And people don't dispute that she is an expert when it comes to testifying. I had never seen this testimony offered in the cases where I've questioned her. But what was the defense to do on cross-examination? The idea of expert disclosure is that we're lawyers, we're not experts. We don't know these things, and so it's disclosed so that we can look into it, we can investigate, we can possibly consult with our own expert, and then we're in a better position to question them. And they were deprived of that opportunity. Plus, they were given a negative result, and then the state was able to water it way down. I understand that they could say, well, sometimes gunshot residue rubs off and there's all sorts of other reasons, and the defense was prepared to question about that. Those are the standard things. But to say that in other states there's this other scientific threshold was just to sandbag the defense, frankly. Counsel, I have some concerns I want to address regarding your brief and some of the cases cited and what you say in your brief those cases stand for. For instance, in People v. Taylor, you indicate that the court excluded the defendant's mother during saying that it was a violation of the right to a public trial, but that's not correct. That was not the holding in People v. Taylor. The holding was the court held that there was no abuse of discretion and exclusion of defendant's mother and stepfather because they were potential witnesses. You also cite People v. Holbeck, and you indicate that the court held the exclusion of the public during testimony of a minor was unconstitutional because the trial court failed to make specific findings. But the actual holding in that case was the exact opposite, where the court found no error in the judge excluding people from trial because it was clear from the record the judge considered the interest of both the defendant and the minor witness. And there are multiple cases in your brief that you cite for certain propositions, and it's inaccurate. So I'm wondering what happened there. Well, that's certainly inexcusable. I've been before this court many times, and I've certainly never had anything like that happen. I can only tell you that we rely on the Lexis, the flags and so forth, and my associate was assisting me, so I will have to have a long chat. And I apologize for that. That's certainly inexcusable. I have nothing else to say. Thank you. Thank you.  Counsel, in reply. A couple quick points if I may, Your Honor, about the red shirt and also the public trial right issue. On the public trial right issue, I think it's important to be blunt about the defendant's argument. He's saying it's pretextual. He said that in the public court, he's saying that here. What that means is he's saying that the two prosecutors that tried this case lied to the judge, misled the judge into believing that the defendant's mother was a witness, even though she really wasn't. He says his motivation for the prosecutors to lie to the judge was they wanted to keep the family out of the courtroom so that the jury would see that he had no family support and think, well, this guy must really be guilty even if his family won't support him. That's what he said in his brief. Obviously, it's difficult to make that argument when your own attorney agrees that his mother's a witness. But setting that aside, he had multiple other family members that attended this trial, and the prosecution made no attempt to exclude them from the courtroom. Why? Because they weren't witnesses. If you look at page R607 of the record, that's moments before trial began. The judge told the lawyers, look in the audience. Make sure there are no witnesses there because we're bringing a jury in. The trial's about to start. When the prosecutor said, they started talking about who was in the audience. When the prosecutor said, well, there's multiple family members here, members of the defendant's family, but there's no need to exclude them because we're not going to call them as witnesses. In the sentencing hearing on page R1356, defense counsel noted that multiple family members had supported the defendant and had attended every day of trial. So the idea that the prosecutors were lying to the judge is just not supported by this record. Were they just mistaken about there being a statement? I think there was a little bit of confusion because, as I mentioned, this was a brief discussion on the record because defense counsel— When they were preparing for the trial, wouldn't they have known whether or not a defendant in police custody made a statement? What the discussion was, was the prosecutor—a brief discussion because, again, defense counsel— Can you answer the question that I asked you? Yes. The question is, obviously they would know whether or not they made a statement. The issue, and I think it was a misstatement by the court referring to a statement, what the judge was saying is the prosecutor had expressed some concern that the defendant might testify about what did happen or didn't happen in terms of how he was treated or discussions about whether he should make a statement, and they wanted a live witness who was there with him in case they needed to rebut it. And counsel agreed. Again, I apologize for beating that point, but counsel agreed. So the judge was faced with lawyers telling him she is a witness, even though she probably won't need to testify, and the judge made a reasonable decision. Now—and I believe in response to Judge Mrs. Tice's question, she asked, well, wouldn't you have to perform this test with every single person on the witness list? And counsel said, well, no, you wouldn't have to do that. You'd only have to do that if someone objects. That's incorrect because he's arguing this is a public trial right violation. Public trial right violation is structural error. That means you don't have to object in the trial court. So theoretically, if you have a witness list with 50 people and you don't object to one of them, on appeal you could raise a public trial right and say, well, I don't think this person that I never mentioned was actually going to testify, and the judge didn't perform the Waller test, so I'm entitled to a new trial. That's not the law. That's not how we do things. In terms of the red shirt, as I mentioned, Your Honor, I'm not—I was not familiar with— and I'm still not familiar because I don't have the record of the exact language that the police officer testified into the suppression hearing, so I don't mean to suggest the police were not involved in any way in this decision to wear the red shirt. My point is, is that he was not required to wear the red shirt. That is what the record shows. Now, whether it was because he asked for any kind of clothing and they brought him the red shirt because they knew it belonged to him, that may have been what happened. I'm not arguing that. The point, though, that matters is they did not require him. They didn't force him to put it on. They didn't prevent him from taking it off if he wanted to. And what the law says is as long as you are not required to wear the clothing, that is not an issue. And here the record shows he was not required to wear it. In terms of the question about the gunshot powder residue, I think some of this may have gotten lost in what counsel was saying. He's raising a claim under People v. Lovejoy, a decision from this court. What Lovejoy says is that an expert cannot provide a report before trial that says one thing and then take the exact opposite position at trial and argue the opposite. So, for example, in Lovejoy there was a blood expert who provided a report before trial that said basically I had tested the defense bathroom for the presence of blood, didn't find any blood. Then at trial she took the opposite position and said I tested it and, in fact, I did find blood. And I know my report said I didn't, but that was a false negative. I really believe there was blood there. So taking the opposite position. That's not what occurred here. Before trial, the expert in this case presented a report that said a couple things. She had tested the defendant's hand. She found one gunshot powder residue particle. Under her view, one gunshot powder residue particle is not enough to have any kind of scientific confidence that he fired a gun. She said in her report that you have to have at least three particles to be scientifically confident that they actually fired a gun. So maybe he fired a gun, but maybe he didn't. You couldn't say with any scientific certainty. What did she say at trial? She said the exact same thing. I tested his hand. There was only one particle. One particle is not enough. There has to be three particles. Now the defendant has focused on the fact that she said some labs use one particle. What he's leaving out is a couple things. She also testified that some labs use four particles as the standard. She reiterated several times that the reason she used three particles is because she believed three particles was the scientifically correct standard. She believed that labs that use only one particle were using the wrong standard, that one particle would give you a lot of false positives. So she reiterated because there was only one particle, she did not believe that you could be scientifically confident that he had fired a gun, which is exactly what she said in her report. So there was no discovery violation, certainly, and nothing had been entitled to a new trial. So unless there are any other questions, we would ask this Court to reverse the appellate court's judgment and remain for consideration of his remaining claims. Thank you. Thank you very much. This case, number 130067, People v. the State of Illinois v. Matthew Smith, will be taken under advisory. Thank you very much, both of you, for your spirited arguments.